UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LITTLETON EMMETT JACKSON,

        Plaintiff,

v.                                            Case No. 17-C-34

SONYA L. ANDERSON, et al.,

        Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

On January 9, 2017, Plaintiff Littleton Emmett Jackson, who is representing himself and is currently incarcerated at Wisconsin Secure Program Facility (WSPF), filed a complaint under 42 U.S.C. § 1983, asserting Defendants were deliberately indifferent to an allegedly broken bone in his face and retaliated against him for filing inmate complaints against Health Services Unit (HSU) staff. Defendants Anderson, Bethel, and Waterman (the State Defendants) filed a motion for summary judgment on January 16, 2018. Defendant Griffin also filed a motion for summary judgment. For the reasons explained below, Defendants' motions will be granted and the case will be dismissed.

### I. BACKGROUND[1]

At all times relevant to this case, Jackson was incarcerated at WSPF. State Defs.' Proposed Findings of Fact (SDPFOF), ECF No. 65, at ¶ 1. Jolinda Waterman is WSPF's Health Services Manager, Sonya Anderson is a registered nurse employed at WSPF as a Nurse Clinician 2, and

---

[1] Because Defendants have moved for summary judgment, the Court construes all reasonable inferences in favor of Jackson, the non-moving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). Thus, the Court attempts to set out the following facts in the light most favorable to Jackson.

Nathan Bethel is a registered nurse employed at WSPF as a Nurse Clinician. *Id.* at ¶¶ 3, 5, 6. Cindi Griffin is a registered nurse and advance practice nurse practitioner employed by Memorial Hospital of Boscobel. Griffin's Proposed Findings of Fact (GPFOF), ECF No. 74, at ¶¶ 8–9. As part of her responsibilities, Griffin provides medical care to inmates at WSPF via tele-medicine, which allows her to interact with prisoners remotely. *Id.* at ¶¶ 11–12.

On July 21, 2015, Jackson submitted an Interview Request form, complaining about a bump on the side of his right ear and stomach pains. SDPFOF at ¶ 24. Jackson presented to an appointment with Anderson on July 22, 2015, complaining about the bump on his ear, stomach pain, and a problem near his groin. *Id.* at ¶ 25. Even though Jackson complained of groin problems, he refused to let Anderson examine him. *Id.* at ¶ 26. At the end of the appointment, Anderson presented Jackson with a Health Services Request (HSR) form to authorize a co-payment for the appointment. Jackson refused to sign the form because he did not believe he was required to make a co-payment and accused Anderson of failing to do her job. *Id.* at ¶ 27; Pl.'s Resp. to SDPFOF, ECF No. 84 at ¶ 2.

Jackson subsequently filed an inmate complaint challenging the co-pay charges. SDPFOF at ¶ 99. Inmate Complaint Examiner Ray investigated his complaint and contacted Waterman about the disputed co-pay. *Id.* Waterman reviewed the records and agreed Jackson should not have been charged the co-payment. *Id.* at ¶ 100. At no point did Ray consult Anderson about the incident. *Id.*

Jackson was seen by members of HSU several additional times in September 2015. *Id.* at ¶¶ 28–30. On October 5, 2015, Jackson bumped his left cheek on a bar while lifting weights. *Id.* at ¶¶ 10–11. Jackson did not report the injury to security staff during or after the recreation time

and did not seek immediate medical help. *Id*. at ¶ 12. Instead, Jackson submitted an HSR later that day, complaining about (1) the bump near his right ear; (2) the feeling that his arteries were blocked; (3) his belief that he broke a bone while exercising; (4) his lack of Vitamin D; and (5) his lower body pains. *Id*. at ¶ 31. On October 7, 2015, Bethel offered to see Jackson in the HSU. Jackson refused to be seen because he did not want to be examined in front of the security staff that were required to remain in the room. *Id*. at ¶ 32.

After refusing to be examined by HSU, Jackson submitted an HSR that repeated the concerns contained in the October 5, 2017 HSR and emphasized that he wanted the bump near his right ear removed. *Id*. at ¶ 33. Bethel examined Jackson on October 8, 2017. He examined Jackson by gently pressing his fingertips on the sides of Jackson's face and noted that he felt the lump pulsate. He also used an otoscope to examine Jackson's ears. *Id*. at ¶¶ 37, 40. Jackson declined Bethel's offer to use ibuprofen or Tylenol for any pain. *Id.* at ¶ 37. Jackson told Bethel that he believed he broke a bone, and Bethel responded that Jackson would be scheduled for an appointment with a doctor. Pl.'s Proposed Findings of Fact (PPFOF), ECF No. 85, at ¶ 4.

Jackson filed an inmate complaint on December 17, 2017, complaining that he was being denied medical care for the bump by his right ear, that he occasionally does not get his HSRs back, and that he had previously complained of a broken bone. DPFOF at ¶ 102. Again, Examiner Ray consulted Waterman. Waterman reviewed Jackson's file, noted Jackson had been seen in HSU several times to address his various medical concerns, and recommended dismissal of the complaint. *Id*. at ¶¶ 102–03.

On January 9, 2016, Anderson conducted rounds within the segregation unit. She noted Jackson was responsive to her inquiries about his health and had no complaints or signs of injury or

3

illness. *Id.* at ¶ 46. Jackson alleges that once he realized Anderson was asking about his health, he tried to speak with her about his place on the doctor's list, but she ignored him. State Defs.' Proposed Findings of Fact Reply (SDPFOFR), ECF No. 94, at ¶ 46. Jackson later submitted an inmate complaint about the incident. SDPFOF at ¶ 105. Waterman investigated the complaint and spoke with Anderson, who stated she left because the inmate across from Jackson was being sexually inappropriate and both Jackson and the inmate stated they were fine. *Id.* at ¶ 106. The complaint was dismissed, and Jackson did not appeal that determination. *Id.* at ¶ 107.

On February 16, 2016, Griffin held a tele-med appointment with Jackson. Jackson expressed concern about the right ear bump and pain under his left pectoral muscle. He also reported concerns about heart disease due to his family history. SDPFOF at ¶ 47. During the tele-med appointment, an on-site nurse physically examined Jackson's right ear and reported a "pea sized" lump under Jackson's skin. *Id.* at ¶ 48. Griffin referred Jackson to dermatology for the right ear bump and ordered an ultrasound of the left pectoral muscle. *Id.* at ¶ 49. Even though Jackson told Griffin that he believed he had a broken bone, he did not complain of vision loss, problems chewing, or facial pain and did not request an x-ray. GPFOF at ¶ 45. Griffin did not address the broken bone at this appointment and instead directed him to submit an HSR detailing his concerns. SDPFOFR at ¶ 51.

On February 25, 2016, Jackson submitted another HSR about his belief that he had a broken bone. SDPFOF at ¶ 52. That same day, Anderson saw Jackson in HSU to address Jackson's complaints of headaches and side torso pain. Jackson expressed concerns about a broken bone in his face. Anderson examined his face and told him to submit another HSR to see the doctor. PPFOF at ¶¶ 7–8. Jackson refused ibuprofen or Tylenol to relieve discomfort. *Id.* at ¶ 53.

4

On March 2, 2016, Jackson underwent a chest ultrasound. SDPFOF at ¶ 54. Jackson submitted an HSR on March 6, 2016, asking to receive an x-ray for his broken bone and seeking Vitamin D. A non-defendant nurse informed Jackson that he was on the list to see the doctor. *Id*. at ¶ 55. On March 28, 2016, Jackson submitted an HSR about the right ear bump. *Id*. at ¶ 56.

On May 10, 2016, Griffin saw Jackson again via tele-med about the right ear bump and his blood pressure. Even though Griffin had referred Jackson to dermatology for the bump at their last appointment, the appointment had not yet been scheduled. *Id*. at ¶¶ 57–58. During the appointment, Jackson complained to Griffin that his concerns about the broken bone in his face were being ignored. Griffin told him to continue to write HSU until they address it. Griffin's Reply to GPFOF, ECF No. 91. at ¶ 55. Jackson did not complain of pain, problems chewing, vision loss, or feeling the broken bone and did not request an x-ray. *Id*.

On the same day, but apparently outside of the appointment, Jackson submitted an HSR addressed to Griffin asking when he would get an x-ray, requesting vitamins, and inquiring as to whether his pains were caused by an STD or cancer. SDPFOF at ¶ 59. Anderson processed the HSR and submitted it to Griffin on May 11, 2016. *Id*. at ¶ 61. Griffin does not recall whether she received the HSR. GPFOF at ¶ 59.

On May 23, 2016, Jackson presented for an appointment with Dr. Karl Noll, a dermatologist with Gunderson Health System, about the right ear bump. Dr. Noll recommended a consultation with an Ear, Nose, and Throat (ENT) specialist. SDPFOF at ¶ 62. Jackson had no questions or concerns after his visit with the dermatologist. *Id*. at ¶ 63.

From May 26 to June 9, 2016, HSU saw Jackson about various medical complaints, including his potassium levels, wanting black velcro shoes, a broken toe, and a bad hip. *Id*. at

¶¶ 64–66, 69, 74. Griffin saw Jackson via a tele-med appointment on June 13, 2016, to address his complaints about his blood pressure medication and his heart-related questions. *Id*. at ¶ 75. During the visit, Jackson did not discuss his concerns with a broken facial bone; did not complain of facial pain, vision loss, or problems chewing; and did not request an x-ray of his face. GPFOF at ¶ 78.

On June 16, 2016, Jackson saw Dr. Michael Case, an ENT, about the right ear bump. SDPFOF at ¶ 76. Dr. Case performed an ear, ear canal, external ear, neck, nose, and oral exam. He did not observe Jackson being in any acute distress. *Id*. at ¶ 77. Dr. Case biopsied the right ear bump and determined the bump was benign, lymphoid tissue. *Id*. at ¶ 78. Jackson saw Dr. Case for a follow-up appointment on August 19, 2016. Dr. Case concluded no further action was necessary. *Id*. at ¶ 80.

On September 13, 2016, Anderson conducted rounds in segregation. When she knocked on Jackson's door, he expressed no complaints, signs of injury, or other health concerns. *Id*. at ¶ 81. On November 25, 2016, Jackson saw Dr. Case again for a routine check up in November 2016 and again on March 3, 2017. *Id*. at ¶¶ 83, 86. In addition to this medical treatment, HSU staff responded to an additional 49 HSRs and Interview and Information Requests that Jackson submitted from January 25, 2016 to January 7, 2017. Waterman Decl., ECF No. 66, at ¶ 65.

On January 9, 2017, Jackson initiated this lawsuit, alleging Defendants had been deliberately indifferent to his allegedly broken facial bone. ECF No. 1. He also claims Defendants are retaliating against him based on the argument he had with Anderson on July 21, 2015, and the subsequent inmate complaint he filed against her.

## II. LEGAL STANDARDS

Summary judgment is appropriate when the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In

deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### III. DISCUSSION

**A. Deliberate Indifference**

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. It imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment. *Id.* at 828; *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). This does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. An inmate's claim for deliberate indifference must establish "(1) an objectively serious medical condition; and (2)

an official's deliberate indifference to that condition." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012).

Turning to the first prong of the deliberate indifference standard, Jackson must show that he has an objectively serious medical need. An "objectively serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Jackson has failed to demonstrate that he has an objectively serious medical need because he has presented no evidence that he actually had broken a bone. Though Jackson insists that he must have a broken bone in his face, his lay opinion is insufficient to serve as evidence of a serious medical need. Indeed, numerous doctors and medical staff at the institution as well as two specialists have examined Jackson's face, and not one of them has diagnosed Jackson with a broken bone in his face. In addition, there is no evidence of a facial deformity, such as swelling or bruising, that would indicate a broken bone and necessitate a doctor's attention.

While allegations of chronic and substantial pain may constitute an objectively serious medical condition, *see Hayes v. Snyder*, 546 F.3d 516, 522–23 (7th Cir. 2008), the record does not contain any evidence that Jackson's pain was substantial. Jackson did not immediately report that he hit his cheek on a bar while lifting weights at the time the incident occurred on October 5, 2015. When Jackson did finally report the injury, he listed his concerns amongst a list of other complaints. HSU offered to examine Jackson on October 7, 2015, but he refused treatment because he did not want security officers to be present at the appointment. A nurse physically examined his face on October 8, 2015, by pressing on both sides of his face and did not note a broken bone. Jackson did not complain about his face again until mid-December, approximately two and a half months after

8

the injury occurred. Jackson did not submit another HSR about the purportedly broken bone until February 25, 2016, and again in May 11, 2016. He did not otherwise complain about a broken bone until January 9, 2017, when he initiated this lawsuit.

Because Jackson offers no evidence that he had a broken bone in his face or that he was in substantial pain, there are no facts upon which a rational factfinder could find that Jackson suffered from a serious medical condition. As a result, his deliberate indifference claim must fail. *See, e.g.*, *Williams v. Jackson*, No. 01-CV-1520, 2002 WL 598516, at *4–5 (N.D. Ill. Apr. 18, 2002) (finding plaintiff had failed to produce any evidence, other than his own allegation, that he was stabbed); *Moore v. Liszewski*, No. 1:07-CV-1173, 2009 WL 3156711, at *4–5 (C.D. Ill. Sept. 28, 2009) (concluding plaintiff's allegations of self-diagnosed migraines were insufficient to establish an objectively serious medical condition without other evidence), *rev'd on other grounds by Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011).

Even if Jackson had established an objectively serious medical condition, he fails to establish that Defendants were deliberately indifferent to his medical needs. "[W]e must examine the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to his serious medical needs." *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997). In reviewing the medical care Defendants provided Jackson from October 5, 2015, when he slipped in the weight room, through January 9, 2017, when he filed the complaint, the record shows that the medical staff responded to Jackson's medical requests and provided ongoing treatment. Indeed, HSU staff responded to a total of 49 HSRs and Information Requests over the course of one year and repeatedly examined Jackson about all of his concerns. Jackson's concerns with his purportedly broken bone were sporadic and generally interspersed among a variety of other medical maladies.

When Jackson specifically complained to medical staff about the broken bone, they examined Jackson, placed him on the list to see a physician, and offered him pain medication, which he refused. Even though Jackson did not see the institution's physician regarding the broken bone, he had a number of off-site appointments with a dermatologist and an ear, nose, and throat specialist regarding face-related concerns.

Defendants were anything but indifferent to Jackson's medical needs. Jackson asserts that he should have received an x-ray of his face to determine if he did break a bone. Yet when Jackson informed medical staff of his belief that he broke a bone in his face, he did not complain of pain, vision loss, or swelling and never requested an x-ray. Although Jackson may disagree with the way in which he was treated, mere disagreement with the medical staff's chosen course of treatment does not amount to deliberate indifference under the Eighth Amendment. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). Jackson has not shown that the medical staff's decisions were "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not based the decision" on his or her medical judgment. *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) (citation omitted). In short, Jackson has failed to establish that the medical staff were deliberately indifferent to his medical needs.

**B. Retaliation**

Jackson also alleges that Bethel, Anderson, and Waterman's deliberate indifference to his alleged broken facial bone is a retaliatory response to the argument he had with Anderson on July 21, 2015 related to whether he was required to pay a co-pay and the inmate complaint he filed against her.[2] In order to succeed on a claim of retaliation, Jackson must show: "(1) he engaged in

---

[2] Jackson has abandoned his claim against Griffin for retaliation. Pl.'s Resp. to GPFOF at ¶ 36, ECF No. 82.

activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). Jackson "bears the burden of offering evidence showing that 'the defendants knew of the protected speech . . . .'" *Earl v. Karl*, 721 F. App'x 535, 537 (7th Cir. 2018).

As an initial matter, Jackson's argument with Anderson is not activity protected by the First Amendment. *See, e.g.*, *Nieto v. Godinez*, No. 16-cv-0761-MJR, 2016 WL 4540894, at *2 (S.D. Ill. Aug. 31, 2016) ("Plaintiff also has no First Amendment right in fighting"); *Bates v. Andrews*, No. 4:09-cv-00026-SPM-GRJ, 2012 WL 592904, at *5 (N.D. Fla. Feb. 3, 2012) (collecting cases) (explaining that the inmate's response to a guard's denial of the inmate's request was not protected by the First Amendment because "[s]uch argumentative, coercive, and insubordinate statements, in the prison context, fall outside the scope of the First Amendment's protection"). Therefore, only Jackson's inmate complaint is protected activity.

Jackson's claim against Defendants fail because Jackson has not established that he suffered a deprivation that would likely deter future First Amendment activity. Again, Defendants were anything but deliberately indifferent to Jackson's medical needs and did not deny Jackson medical care. Indeed, after Jackson submitted the inmate complaint, he was examined by HSU staff on at least twenty-four occasions; received a chest x-ray, ultrasound, and biopsy; and attended off-site appointments with two specialists. For this reason, summary judgment on Jackson's retaliation claim is appropriate.

## IV. CONCLUSION

Jackson has failed to present evidence of deliberate indifference or retaliation and, after reviewing the record as a whole, no rational trier of fact could find that Defendants were deliberately

indifferent or retaliated against Jackson.  Consequently, the State Defendants' motion for summary judgment (ECF No. 63) and Griffin's motion for summary judgment (ECF No. 70) are **GRANTED** and this case is **DISMISSED**.  The Clerk is instructed to enter judgment accordingly.

**SO ORDERED** this   29th   day of August, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court